CLIFFORD CROWLEY ET AL. *v.* LOUIS DIX ET AL.

EDWARD D. JOHNSTON *v.* LOUIS DIX ET AL.

MARY HETES *v.* THOMAS MESSINA ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued June 7—decided August 23, 1949.

*Samuel Engelman* and *Robert H. Gould,* for the appellants (defendants Dix et al.).

*John J. Hunt,* with whom, on the brief, were *Elbert O. Hull* and *Louis George,* for the appellees (plaintiffs Crowley and Johnston).

*Joseph G. Shapiro* and *Johnson Stoddard,* with whom was *Milton H. Belinkie,* for the appellees (plaintiff Hetes et al.).

BROWN, J.   These three cases, tried together, arose out of a collision between a Plymouth coach which was owned by Mary Hetes and operated by her son George Hetes as her agent and in which she, Edward D. Johnston and Clifford Crowley were passengers, and a taxicab owned by the defendants Dix and Trostonoff and operated by the defendant Messina as their agent.   In each action negligent operation is alleged.   In the first case Clifford Crowley, a minor, and John Crowley, his father, both as his next friend and for himself, sued Mary Hetes, George Hetes, Dix, Trostonoff and Messina.   In the second, Johnston sued the same defendants.   In the third, Mary Hetes sued Dix, Trostonoff and Messina.   In the first two cases the jury rendered a verdict for the plaintiffs to recover of Dix, Trostonoff and Messina and found in favor of Mary and George Hetes.   In the third the jury rendered a verdict for the plaintiff to recover of the defendants.   In all three cases the court denied the defendants' motions to set aside the verdicts and the defendants have appealed from the denial of the motions and from the judgments.

We summarize the undisputed material facts.   Berkshire Avenue in Bridgeport extends in a general easterly and westerly direction and is intersected at right angles by Brooks Street.   Each thoroughfare is straight, level and approximately thirty-one feet in width between curbs.   There is a dwelling house on the lot at the northeast corner of the intersection and between it and the southwesterly corner of the lot is an evergreen tree.   In the curb at the northeast corner of the intersection is an electric light pole.   The house, tree

and pole together, in large measure at least, obstruct the view which a driver approaching the intersection on Berkshire Avenue from the east has of traffic approaching it on Brooks Street from the north, and which a driver so proceeding on Brooks Street has of traffic approaching the intersection on Berkshire Avenue from the east. On the evening of February 17, 1946, which was clear and dry, shortly after 10 o'clock George Hetes was driving the Plymouth westerly on Berkshire Avenue. Upon reaching Brooks Street, as the Plymouth proceeded through the northwest quadrant of the intersection it collided with the defendants' taxicab, which Messina was driving southerly on Brooks Street; as a result, the Plymouth spun around and came to rest, headed in an easterly direction, some distance west of the intersection. Crowley was thrown out and seriously injured, Mary Hetes and Johnston also sustained injuries, and the right side of the Plymouth was extensively damaged. The front end of the taxicab was damaged and it came to a stop headed southwesterly near the southwest corner of the intersection. We shall refer to Dix, Trostonoff and Messina as the defendants.

The defendants have assigned errors in the charge, but at its conclusion they made no objection to it involving any of these claims, and we do not consider the assignments except as portions of the charge referred to in them are involved in claimed errors in the refusal of the court to give two requests to charge. Practice Book § 156; *Svenberg* v. *Subotkouski,* 133 Conn. 329, 332, 50 A. 2d 441. The latter call for a recital of certain of the parties' claims of proof as set forth in the finding, which is not subject to correction in any respect material to the decisive issues. There was no direct testimony that the taxicab was going forty miles per hour, as the plaintiffs claimed to have

proved, but a comparison of distances traversed by the taxicab and another car, as to the speed of which there was direct evidence, justifies a claim of proof by the plaintiffs that the taxicab was going at that speed. In this connection, we note a colloquy between the court and counsel where the court seems to have intimated that testimony that a car was going "very fast" was not admissible. In a series of decisions we have held that such testimony has little weight as indicating any definite speed; *Swayne* v. *Connecticut Co.*, 86 Conn. 439, 444, 85 A. 634, 737; *Martino* v. *Connecticut Co.*, 109 Conn. 559, 561, 147 A. 20; *Nichols* v. *Nichols*, 126 Conn. 614, 618, 13 A. 2d 591; and where, in *Brock* v. *Waldron*, 127 Conn. 79, 84, 14 A. 2d 713, we said that testimony "that the car was 'going fast' means little," we were speaking of the particular situation then before us. Testimony that a car is going "fast" or "slow" is admissible, and, while it has little weight as indicating any definite speed, in general the weight to be given it depends upon the circumstances of the particular case and is for the jury.

The following in substance were claims of the plaintiffs and of the defendants George and Mary Hetes. The positions of the house, evergreen tree and pole mentioned above were such as to obstruct, in the case of a driver proceeding west on Berkshire Avenue and approaching the intersection from the east, his view of traffic proceeding south on Brooks Street and approaching the intersection from the north; likewise, they obstructed, in the case of a driver proceeding south on Brooks Street toward the northerly line of the intersection, his view of traffic on Berkshire Avenue coming to the intersection from the east, except for a very limited view afforded through the space between the southwest corner of the house and the evergreen tree. The Plymouth, with its headlights on, ap-

proached the intersection from the east at a speed of from twenty to twenty-five miles per hour. As it came to the easterly line of the intersection, the driver's view was obstructed by the conditions recited above and he reduced its speed to about fifteen miles an hour. He looked both north and south on Brooks Street, saw no vehicle approaching, and drove on through at a slightly increased speed. When he had proceeded about halfway, he suddenly saw, approximately twenty-five feet away, the headlights of the defendants' taxicab, which was approaching without signal from the north. To avoid a collision he increased his car's speed somewhat and veered left. The taxicab proceeded at about forty miles per hour until about five feet north of the intersection. There its brakes, applied by Messina, took hold. With the brakes on, it continued into the intersection and its front end struck the rear half of the right side of the Plymouth with great force. Although he knew that the intersection was dangerous, Messina did not look to see whether any car was approaching or entering it from the east until just before he applied his brakes when five feet north of it.

The following in substance were claims of the defendants Dix, Trostonoff and Messina. The positions of the house, evergreen tree and pole obstructed the view of the driver of the Plymouth in such a manner that he had no vision of traffic approaching the intersection from the north on Brooks Street until his car, going west on Berkshire Avenue, had reached the easterly line of the intersection. He looked neither south nor north on Brooks Street until his car had passed the easterly line of the intersection and was from twelve to fifteen feet within it. The taxicab, with all lights lighted, approached the intersection from the north at a speed of from twenty to twenty-five miles

per hour until, about thirty feet north of it, its driver reduced the speed somewhat. When the taxicab reached the north line of the intersection, its driver for the first time saw the lights of the Plymouth approaching from his left, at which time it was two or three feet east of the intersection. He immediately applied the brakes of the taxicab but it continued on in a southerly direction to a point three or four feet within the intersection, where it came to a stop. The right front fender of the Plymouth as it proceeded westerly through the intersection came in contact with the left part of the front bumper of the taxicab, which was then at a standstill. Neither before nor after the driver of the Plymouth was able to see north on Brooks Street did he bring his car to a stop; he entered the intersection from the east without stopping and continued on through in a westerly direction at about twenty-five miles per hour, having accelerated speed after the car had passed a point opposite the evergreen tree at the northeast corner.

The defendants' first request to charge was: "When the operator approaching an intersection with another car approaching on his right does not see, but reasonably should have seen the other car and if the cars continued at their then speed there would be danger of collision, he would be negligent if he proceeded into the intersection." The court adequately instructed the jury upon the relative duties of the two drivers under the circumstances. It properly charged them as to the duty upon the driver approaching from the left to keep a lookout, defined what the statute (General Statutes § 2489) means by "arriving at [the] intersection at approximately the same time," and stated the driver's duty to yield the right of way where that situation prevails. Then, referring specifically to the duty upon the driver of the Plymouth to keep a lookout, the court

charged that, if by reason of a failure to use reasonable care in this respect he did not see the approaching taxicab, "then the knowledge that such a lookout would have revealed is imputed to the driver of the Plymouth and his conduct must be viewed as if he actually possessed it." The instructions so given were correct and sufficient and the court was under no duty to charge in the language of the request. *Dokus* v. *Palmer,* 130 Conn. 247, 254, 33 A. 2d 315; *Hoffberg* v. *Epstein,* 130 Conn. 613, 615, 36 A. 2d 388.

The gist of the defendants' second request was that if the jury found that neither car was proceeding at an excessive speed under the circumstances, and the vision of both drivers was so obstructed by the evergreen tree at the northeast corner that neither saw the other car until he was in the intersection, the taxicab had the right of way, since it was approaching the intersection upon the right of the Plymouth at approximately the same time, and so "had precedence in passing through and the right not to be hindered, obstructed or delayed by any person who could reasonably avoid doing so." The request went on to state Messina's rights and duties incident to the proper exercise of this right of way and concluded: "On the other hand, it was the duty of Hetes to yield the right of way and the fact that the evergreen tree obscured his vision of any car approaching from his right would require of him care in proportion to the danger of the situation." The court in its charge fully and correctly instructed the jury as to the circumstances under which the statute as to the right of way at intersections is applicable, the principles determinative of its applicability, and certain claims of the parties and their duties under the statute in the more usual case where each operator before he actually reaches the intersection has opportunity to see the other vehicle approaching

it. Since the claims of proof referred to a view across the northeasterly corner which though obscured was not completely shut off, these instructions were necessary and proper.

The request was directed to the possibility of a finding by the jury that the driver had no view at all until he had actually reached a point within the intersection. Since upon the claims of proof the jury might have so found, the defendants were entitled to an instruction thereon. The court in its charge expressly referred to this as "another situation" and told the jury that under such circumstances, if they found that there had been no other negligence upon the part of either driver, "then since both cars were approaching the intersection and the taxicab was on the Plymouth's right as they entered, the taxicab had the right of way and it was the duty of the driver of the Plymouth to permit him to pass through the intersection ahead of him without danger of collision." The court's instructions gave the defendants all to which they were entitled under their request.

But two of the errors assigned as to rulings upon evidence merit mention. Upon cross-examination of Johnston in his action, counsel for the defendants George and Mary Hetes offered his written statement that he thought the accident was due entirely to the fault of the taxicab driver and not to that of George Hetes. Counsel for the other defendants objected on the ground that this stated a conclusion. The court admitted it, not as evidence of fault, but merely as indicative of an attitude inconsistent with the claims in Johnston's complaint, to affect credibility only, and so charged the jury. The ruling was correct. 3 Wigmore, Evidence (3d Ed.) § 1041; notes 118 A. L. R. 1230, 158 A. L. R. 820, 823; see *Huber* v. *H. R. Douglas, Inc.*, 94 Conn. 167, 175, 180, 108 A. 727; *Reiner* v.

*Maier,* 96 Conn. 566, 567, 114 A. 657; *Hubbard* v. *Schlump,* 106 Conn. 216, 219, 137 A. 644. The defendants could not have been prejudiced, as they claim, by the question asked on cross-examination of their witness Frizinia, to affect credibility, as to whether he had ever been convicted of a crime. Not only was the question not answered but, immediately after, a record of his conviction on a charge of breaking and entering and also a record of his conviction on a charge of theft of an automobile were laid in evidence without objection. General Statutes § 7868; *State* v. *English,* 132 Conn. 573, 580, 46 A. 2d 121.

The defendants' argument in support of their assignment that the court erred in refusing to set aside the verdicts as against the evidence on the ground that they are contrary to the indisputable physical facts is not such as to require discussion. The defendants have also assigned error in the court's refusal to set aside as excessive the verdict for Clifford Crowley of $30,000 and for Mary Hetes of $5000. Clifford Crowley was seventeen years of age with a life expectancy of forty-nine years. He was critically hurt. His more serious injuries included an extensive scalp laceration, six fractured ribs involving the displacement of four, a severe compression fracture of the second lumbar vertebra with lateral wedging deformity, fractures of the transverse processes of three other vertebrae, a fracture of the pelvis with overriding of the fragments, a separation of the left sacroiliac joint, and severe multiple abrasions and shock. He was in the hospital for nearly four months. For at least a week he was afraid that he would not recover. He suffered intense physical pain. His body was still incased in a cast from armpits to hips when he left the hospital. Two years after the accident he continued to suffer from weakness and pain in his back, stood with a tilt of the spine to the left,

and had a palpable angular deformity of the lower spine and restricted motion and pain in the spine upon bending. His permanent partial disability is 15 per cent. He was unable to undertake regular employment until fourteen months after the accident. While the verdict was large in amount we cannot say that the experienced trial judge, who observed Clifford Crowley and other witnesses, erred in denying the motion to set it aside as excessive. Mary Hetes sustained severe contusions and five fractured ribs, was confined to the hospital for three weeks, and suffered severe pain and discomfort which persisted at intervals to the time of trial nearly three years after the accident. The damage to her car amounted to $279.50 and her other special damages were approximately $870. The court did not err in refusing to set aside the verdict in her favor as excessive.

There is no error.

In this opinion the other judges concurred.